ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION
2014 MAY 14  PM 1:59
CLERK OF COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:14-CR-087-O |
| ABBAS ZAHEDI (02) | **(Supersedes Indictment returned April 16, 2014 as to defendants Zahedi and Guy)** |
| REGINALD GUY (04) | |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times material to this Superseding Indictment:

### General Allegations

#### Introduction

1. As set forth more fully below, the defendants, **Abbas Zahedi** and **Reginald Guy**, together with others known and unknown to the grand jury, conspired to defraud and did defraud health insurers by submitting and causing to be submitted claims for chiropractic and occupational therapy services that were not provided. During and in relation to this health care fraud conspiracy, **Zahedi** and **Guy** unlawfully used the means of identifications of other persons.

#### The Health Care Benefit Program

2. Health Care Service Corporation was a private health insurance company. Blue Cross and Blue Shield of Texas (BCBS), a division of Health Care Service Corporation, was a private health plan offered in the State of Texas that provided health

care benefits to individuals enrolled for coverage under individual and group policies. Individuals receiving benefits through BCBS were referred to as "members" or "subscribers."

3. BCBS was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

Claim Submission Process

4. Physicians, chiropractors, occupational therapists, physical therapists, and other health care providers were able to contract with BCBS to become approved BCBS providers. Each approved BCBS provider was assigned a unique provider identification number to use when submitting claims for payment for health care services provided to BCBS members.

5. To obtain payment from BCBS, the provider or the provider's designee was required to submit claims to BCBS that included, among other things, the following information: the provider's unique BCBS provider number, the patient's name, the patient's diagnosis described by a standardized code, a description of the service(s) rendered to the patient using standardized codes, the date and location the services were provided, and the amount claimed for payment.

6. BCBS relied on the provider to submit true and accurate claims.

Coverage of Chiropractic and Occupational Therapy Services

7. Each individual and group policy limited the number and types of covered services. As a general rule, chiropractic care was limited to 10 visits annually, while physical and occupational therapy could continue for 20 or more visits, based on review

and medical necessity. The contracts between BCBS and health care providers stated that BCBS paid only for approved services.

The Defendants

8. **Abbas Zahedi**, a chiropractor, entered into a professional provider agreement with BCBS on April 1, 2001. At that time, he received a BCBS provider identification number, which he was required to use when submitting claims to BCBS regardless of the location in which he practiced. **Zahedi** owned and operated DFW Rehab & Diagnostics (DFW). **Zahedi** operated DFW out of the office of Metroplex DFW Sports Rehab Centers (Metroplex) in Arlington, Texas, from approximately January 2008, through late 2009 or early 2010. In March 2010, **Zahedi** moved DFW out of Metroplex's office and established DFW at a stand-alone location in Grand Prairie, Texas, until it closed in approximately September 2012.

9. **Reginald Guy** worked at Lear Corporation (Lear), in Arlington, Texas, from 2000 until he was terminated in November 2009. Beginning in or about 2003, until 2009, **Guy** was a Lear union representative. While employed at Lear and while acting as a Lear union representative, **Guy** and others he recruited referred numerous Lear employees to Metroplex as part of a fraudulent referral and billing scheme. After **Guy's** termination from Lear, **Guy** was hired as the office manager for Metroplex, and used that position to continue to recruit Lear employees to Metroplex. **Guy** served as the office manager for Metroplex from approximately the beginning of 2010, until approximately early to mid-2011, shortly before the Metroplex clinic closed. In about March or April 2011, **Zahedi** hired **Guy** as a consultant for DFW at its stand-alone location in Grand

Prairie. After **Guy** began working for **Zahedi** at DFW, **Guy** helped transfer Lear patients and patient information from Metroplex to **Zahedi** at DFW, where the fraudulent referral and billing scheme continued.

<u>The Coconspirators Not Named as Defendants Herein</u>

10. James Sterns owned and operated Metroplex in Arlington, Texas. Sterns was not a licensed health care professional and, as such, he personally could not provide health care services. Without a licensed health care professional's provider number, claims submitted by Metroplex to BCBS would not have been approved and paid. **Zahedi** started working at Metroplex in 2008. In approximately early 2010, Sterns hired **Guy** to be the office manager of Metroplex.

11. Gregory Wattron was an occupational therapist at Metroplex from in or around 2008, until July 2011, and at DFW from in or around June 2010, until August 31, 2011. As an occupational therapist, Wattron was licensed to provide functional capacity evaluations (FCE) and other occupational therapy including services such as manual therapy, electrical stimulation, massages, hot packs, cold packs, and therapeutic exercises. Wattron had a BCBS provider identification number, which enabled Metroplex and **Zahedi** (through DFW) to submit claims to BCBS.

12. Tina Perkins was responsible for submitting claims to insurance companies for Metroplex from approximately 2008, through June 2010. Starting in March 2009, through approximately late 2011, or early 2012, Perkins also worked as the biller and office consultant for **Zahedi** at DFW, including at the locations in Arlington and Grand Prairie.

**Superseding Indictment – Page 4**

13.     Donna Harris, Perkins's sister-in-law, initially was a Metroplex patient. In exchange for cash payments, however, Harris soon permitted Metroplex to submit claims to BCBS for services purportedly performed by **Zahedi** and Wattron, when in fact, she received no treatment. In or about January or February 2011, **Zahedi** hired Harris to be the office manager at DFW's stand-alone office location in Grand Prairie. While acting as the office manager for DFW, Harris continued to allow **Zahedi** to submit claims under Harris' name to BCBS for services that were not performed. In addition to the fraudulent claims submitted by Metroplex and **Zahedi** at DFW under Harris' own name, Harris permitted **Zahedi** at DFW to submit claims to BCBS for Harris' immediate and extended family members for services that they did not receive.

<u>Count One</u>
Conspiracy to Commit Health Care Fraud
(Violation 18 U.S.C. § 1349)

14. Paragraphs 1 through 13 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

15. Beginning in or before January 2008, and continuing to May 2012, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendants, **Abbas Zahedi** and **Reginald Guy**, together with other coconspirators not named as defendants herein, James Sterns, Gregory Wattron, Tina Perkins, and Donna Harris, did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the grand jury, to violate 18 U.S.C. § 1347, that is, to devise and to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, the health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

<u>Object of the Conspiracy</u>

16. During the course of the conspiracy, **Zahedi**, **Guy**, and their coconspirators knowingly and willfully participated in a fraudulent health insurance billing scheme in which they submitted claims to BCBS and other insurers for services not rendered. Each benefitted financially from the fraud. It was the object of the conspiracy for the defendants to unlawfully enrich themselves by, among other things, falsely billing BCBS

and other insurance companies for chiropractic and occupational therapy services that were not provided, and by using the means of identification of other persons to submit false claims to BCBS. Beginning on or before January 22, 2008, and continuing until on or about May 25, 2012, the amount billed to BCBS from Metroplex and DFW facilities under **Zahedi's** provider number was $1,786,083.00, and the amount paid was $713,104.86. During about the same period, the amount billed to BCBS from Metroplex and DFW facilities under Wattron's provider number was $2,482,160.50, and the amount paid was $1,470,984.39.

## Manner and Means of the Conspiracy

17. The manner and means by which the defendants and their coconspirators sought to accomplish the purpose of the conspiracy included, among other things:

## The Scheme to Defraud

18. It was part of the scheme to defraud for **Zahedi**, **Guy**, and others to knowingly submit and cause to be submitted to BCBS, claims for health care services that the defendants falsely claimed were performed. In order to receive payment from BCBS and other insurers for services that were not provided, **Zahedi**, **Guy**, and every other member of the conspiracy played an active role.

19. It was part of the scheme to defraud for **Guy** to use his position as Lear union representative, Metroplex office manager, and DFW consultant to recruit Lear employees to Metroplex and DFW so that Metroplex and DFW could submit fraudulent claims (i.e., services purportedly performed by **Zahedi** and others that were not actually

provided). **Guy** was aware of the fraudulent billing scheme during his time as Lear union representative, Metroplex office manager, and DFW consultant.

20. In addition to recruiting Lear employees to Metroplex, in the course of the conspiracy, **Zahedi** and **Guy** began using the names and health insurance information of members of **Guy's** family to submit false claims to BCBS.

21. It was part of the conspiracy to collect the names, health insurance information, and other means of identification of individuals, whether or not they were patients of Metroplex and DFW or had legitimate injuries. It was further part of the conspiracy to use the names and means of identification of those individuals to submit false claims to BCBS for services that were not provided.

22. It was part of the scheme to defraud for **Guy** and **Zahedi** to waive patient out-of-pocket expenses for co-payments and deductibles at Metroplex and DFW.

23. Sterns provided the facility, administrative staff (including Perkins), and equipment at Metroplex and DFW, until **Zahedi** left the Metroplex facility and began operating DFW separately in Grand Prairie.

<u>Fraudulent Billing</u>

24. Beginning at least in 2008, using the provider numbers of **Zahedi** and other licensed health care professionals, **Zahedi,** Sterns, and after the beginning of 2010, **Guy,** submitted, or caused to be submitted, claims to insurance companies for services not performed. Sometimes, this fraudulent billing occurred without the knowledge of the chiropractor or therapist whose provider number was used. In late 2008, **Zahedi** agreed to work with Sterns at Metroplex full-time. Sterns provided the patients and the facility

to **Zahedi**. **Zahedi**, who had a BCBS health care provider number, enabled Metroplex to submit claims to BCBS using his provider number. **Zahedi** knew that Metroplex was submitting claims to insurers for services not rendered.

25. In or about March 2009, Wattron agreed to allow Sterns and **Zahedi** to use his name and provider number to submit claims for physical medicine and rehabilitative services at Metroplex and DFW that Wattron would not perform or supervise in exchange for cash payments.

26. **Zahedi** and **Guy**, as well as Sterns, Perkins, Harris, and Wattron caused claims to be submitted to BCBS for health care services not performed. **Zahedi** would establish the treatment plan as the doctor. **Zahedi** would be listed on the claim forms as the health care service provider initially. It was part of the scheme to then use Wattron's health care provider number rather than **Zahedi's** and submit claims for unperformed occupational therapy services.

27. On occasion, Metroplex and/or DFW billed BCBS under both **Zahedi's** and Wattron's provider numbers for the same patients on the same dates of service, and for the same treatments. Often, claims Metroplex and DFW submitted under **Zahedi's** number, which BCBS processed and denied, would be resubmitted for payment under Wattron's number.

28. Perkins was primarily responsible for the billing at Metroplex and at DFW. Perkins agreed with Sterns, **Zahedi**, and Wattron to file false health insurance claims with BCBS in exchange for a percentage of the fraudulent proceeds. The false claims included additional services not performed when a patient received some treatment, and

claims for dates of service on which the patient was not treated. While at Metroplex and DFW, Perkins submitted, and caused to be submitted, claims to BCBS using **Zahedi's** and Wattron's provider numbers for services she knew were not rendered.

29. In addition to using Lear employees for fraudulent billing, **Guy** and Harris permitted Metroplex and DFW to use insurance information from their own immediate and extended family members to submit numerous claims for medical treatment to BCBS for services not rendered. During the course of the fraudulent scheme, Metroplex and DFW falsely billed BCBS $414,424 for treatment for **Guy** and his family members; and Metroplex and DFW were paid $254,996.64 for those claims. In return for these false claims and the Lear "referrals," **Guy** received employment, temporary living quarters, cash, and other benefits.

30. Metroplex and DFW falsely billed BCBS $652,655 for Harris's family members, and were paid $331,751.80 for the claims. In return, Harris received cash payments. Also, because certain of her family members had serious health conditions, the scheme enabled her to meet her health insurance policy deductible with no out-of-pocket expenditures.

Concealment and Cover-up

Patient Kickbacks

31. For the fraudulent billing of health insurance companies for unperformed services to expand and continue, **Zahedi**, **Guy**, Sterns, and Perkins, developed and participated in a two-part patient kickback program. The first part of the kickback program consisted of paying existing patients in cash for each patient they referred to

Metroplex. The second part of the kickback program consisted of giving existing patients cash, prizes, and other non-monetary incentives, such as false work excuse notes, in exchange for the patients' agreement to allow **Zahedi**, **Guy**, Sterns, and Perkins, to submit the maximum amount of claims permitted under the patient's name and insurance, despite those services not being provided. **Guy** personally made cash payments to patients as part of this scheme. **Zahedi** gave cash to Perkins and Harris to pay his patients for him.

32. When patients complained about the excessive number of false insurance claims in their names, **Guy** and Sterns paid them additional cash to placate them. Metroplex held patient appreciation days, where gift cards and prizes were raffled to the patients participating in the scheme. Later, at DFW in Grand Prairie, **Zahedi** used the same patient appreciation day model as Metroplex.

33. Using money **Zahedi** and/or Sterns provided to her at Metroplex and/or DFW, Perkins paid patients various amounts of cash to allow Metroplex and DFW to continue submitting false medical insurance claims under their policies for services not rendered. **Zahedi** would also provide the patient kickback money in sealed envelopes to Harris, which she then provided to the patients.

## Falsified Records

34. In order to conceal the fraud, records had to be created or modified to justify the services being fraudulently billed. **Zahedi** falsified his patients' medical records, so that any on-site inspection would show that the medical files were consistent with the claims submitted. **Zahedi** and Perkins instructed Harris and other staff members

to create false records in patient charts for services not rendered. Other members of the office staff, also falsified documents for the medical records, such as, "Subjective, Objective, Assessment and Plans," known as "SOAP" notes, to indicate that prescribed therapy was performed when, in fact, it was not. At **Zahedi's** direction, Harris and others also had patients sign blank SOAP notes so they could use them to bill false claims in the future.

35.  After Perkins left Metroplex, **Guy** became involved in the submission of false claims for services not rendered. **Guy** also participated in falsifying documents necessary to the fraudulent billing scheme. On more than one occasion, **Guy**, met with a Lear patient in his office, only to emerge with a stack of blank SOAP notes that had been signed by the patient. **Guy** gave these blank SOAP notes to office staff for filing in the patient files.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

## Counts Two through Six
## Health Care Fraud
### (Violation 18 U.S.C. §§ 1347 and 2)

36.    Paragraphs 1 through 35 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

37.    On or about the dates specified below, in the Fort Worth Division of the Northern District of Texas, and elsewhere, the defendants, **Abbas Zahedi** and **Reginald Guy**, together with their coconspirators, in connection with the delivery and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud BCBS, a health care benefit program affecting commerce, as defined by 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, BCBS, that is, the defendants submitted, and aided and abetted in submitting, false and fraudulent claims to BCBS, seeking payment for physical medicine and rehabilitative services that were not provided, each a separate Count:

| Count | Date of Service | BCBS Member | Claim Number | Amount Submitted |
|---|---|---|---|---|
| 2 | 07/10/2009 | R.K. | 200920551012190X | $405.00 |
| 3 | 08/27/2009 | Guy | 200924750723740X | $270.00 |
| 4 | 09/16/2011 | M.G. | 2011263512L2470X | $662.00 |
| 5 | 10/10/2011 | Guy | 201129151B12500X | $331.00 |
| 6 | 12/23/2011 | D.H. | 201205103122550C | $331.00 |

All in violation of 18 U.S.C. §§ 1347 and 2.

<u>Counts Seven through Ten</u>
Aggravated Identity Theft
(Violation 18 U.S.C. §§ 1028A and 2)

38. Paragraphs 1 through 37 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

39. On or about the dates specified below, in the Fort Worth Division of the Northern District of Texas, and elsewhere, the defendants, **Abbas Zahedi** and **Reginald Guy**, and their coconspirators did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to violations of 18 U.S.C. § 1347, Health Care Fraud, knowing that the means of identification belonged to actual persons, by possessing, transferring, and using the names, BCBS member information, and other means of identification of another person to obtain payment for health care services that were not provided, each a separate Count:

| Count | Date of Service | BCBS Member | Claim Number | Amount Submitted |
|---|---|---|---|---|
| 7 | 09/02/2011 | M.G. | 201124951H89340X | $572.00 |
| 8 | 09/09/2011 | M.G. | 2011256510F7550X | $662.00 |
| 9 | 09/27/2011 | A.H. | 201127751856F60X | $331.00 |
| 10 | 12/23/2011 | A.H. | 201136150X32830X | $331.00 |

All in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## Forfeiture Notice
### (18 U.S.C. § 982(a)(7) and 18 U.S.C. § 982(a)(1))

41. Upon conviction of the offenses alleged in Counts One through Six of this Superseding Indictment, and pursuant to 18 U.S.C. § 982(a)(7), defendants **Abbas Zahedi** and **Reginald Guy** shall forfeit to the United States any property, real or personal, constituting or derived from, directly or indirectly, the gross proceeds traceable to the commission of the offense.

42. The above-referenced property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

## Substitute Assets

43. Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-described property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described property subject to forfeiture.

A TRUE BILL.

_____
FOREPERSON

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

_____
NANCY E. LARSON
Assistant United States Attorney
DC State Bar No. 430780
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone:   817-252-5200
Facsimile:    817-252-5455

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

VS.

ABBAS ZAHEDI (02)
REGINALD GUY (04)

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud
(COUNT 1)

18 U.S.C. §§ 1347 and 2
Health Care Fraud
(COUNTS 2-6)

18 U.S.C. §§ 1028A and 2
Aggravated Identity Theft
(COUNTS 7-10)

18 U.S.C. § 982(a)(7) and 18 U.S.C. § 982(a)(1)
Forfeiture Notice

A true bill rendered:

FORT WORTH _____ FOREPERSON

Filed in open court this 14th day of May, A.D. 2014.

Summons to issue

UNITED STATES DISTRICT JUDGE
(4:14-CR-087-O)